PETER NELSON v. ST. PAUL & DULUTH RAILROAD COMPANY.

May 9, 1899.

Nos. 11,533—(118).

Collision at Railway Crossing—Contributory Negligence.

| 76 | 189 |
| 86 | 70 |

*Held,* that the evidence in this case establishes the contributory negligence of the plaintiff's intestate, as a matter of law.

Appeal by plaintiff from an order of the district court for Chisago county, Crosby, J., denying a motion for a new trial. Affirmed.

*Henry J. Gjertsen,* for appellant.
*Hadley & Armstrong,* for respondent.

BUCK, J.

The plaintiff brought this action, as administrator of the estate of John Nelson, deceased, against the defendant railroad company, to recover damages for the death of plaintiff's intestate, alleged to have been caused by the wrongful acts of the defendant on January 12, 1898, at the village of Shafer, in Chisago county, in this state. The case was tried before the court and a jury, and at the conclusion of the testimony the court directed a verdict for the defendant. Plaintiff moved for a new trial, which motion was denied, and he brings this appeal from an order denying this motion.

John Nelson, the deceased, was a farmer living in the vicinity of the village of Shafer, to which place he went on that day to a creamery, and from thence to a blacksmith's shop to have his horses shod. This having been done, about noon of January 12, 1898, he started with his team of horses towards the creamery; traveling along the county road over which the defendant's railroad crosses. With him, in his wagon, was a boy about 14 years old; and, soon after leaving the blacksmith's shop, Nelson attempted to cross the railroad track at the county-road crossing, when the wagon was struck by defendant's train, and Nelson and the boy were killed.

Shafer is a small village of six or seven houses, two stores, a blacksmith's shop, two elevators, a railroad depot, and a creamery. Nelson was 70 years old, lived on a farm a short distance from the village, and was familiar with the locality. The country around Shafer is quite thickly settled, and this county road is the principal one going into the village. It crosses the railroad tracks on a level, immediately west of the depot, at an angle of about 62 degrees. Some days 100 teams pass over this crossing. The blacksmith's shop spoken of is 150 feet north of the crossing, and on the west side of the county road. There was no flagman stationed at the crossing at the time of the accident, and it was not customary to have one there. After Nelson left the blacksmith shop, he drove at a slow trot to and upon the railroad crossing, without stopping, until he was struck by the train. Part of the way from the blacksmith's shop to the railroad crossing the view of the railroad track to the west was obstructed by a pile of wood about 8 feet high, but, a distance of 50 feet from the crossing, a person could see westward

up the track between 300 and 400 feet; and when within 37 feet of the track the view is unobstructed, and a person could see a mile or so westward along the track.

Defendant's train was coming from the west, on the main track, at a speed not exceeding 25 miles an hour. The nearest wood pile was 31 feet from the wagon track, and about 57 feet from the main track. The wagon track was about 10 feet wide, and there were no fences upon either side of the road; and there were no obstructions to prevent a man driving a team from turning it around before reaching the crossing. The side track was some 15 to 20 feet from the main track, and as he approached the former, and when within 25 to 35 feet of the main crossing, he turned his head towards the train, and looked to see if it was coming. Before this time he did not appear to have been looking for the train. When he came to the side track he looked for the train, and then, and just before he reached the track, as he looked in the direction of the coming train, he jerked the lines, to make the horses go faster, and tried to get over the track, but could not make his horses go fast enough. His wagon was a light one, and contained no load, except a few empty milk cans.

This evidence is undisputed, and we think it shows conclusively that Nelson was guilty of negligence which contributed to his death. Nelson saw the train in ample time to have stopped his team and allowed the train to pass, and in time to have turned his team away from it; but, instead of pausing or stopping until the train passed, which would have been in a few moments only, he, after discovering the fast-approaching train, urged his team to go faster,—not away from the danger, but directly into it. It was his duty, when he saw this train so approaching the crossing, and he had an opportunity to stop in a place of safety, or safely retreat, to do so, and avoid the danger, if possible, and not voluntarily and recklessly attempt to cross just ahead of a fast-running train.

There is some conflict of evidence as to the ringing of a bell on the train as it approached and crossed the county road, but Nelson was not thereby lulled into a feeling of security by the absence or want of danger signals; and when he saw the fast-approaching train, not far away, he was at such a distance from the railroad

track that he must necessarily have foreseen and known the risk he was taking in attempting to beat the speed of the train. He was a man of intelligence, carrying on his own business, and familiar with the locality; and notwithstanding the certain danger, and his ability to have prevented the injury, he did not exercise even ordinary care and prudence. Danger signals, such as blowing of a whistle and ringing of a bell upon an approaching engine, are required for the purpose of warning persons, approaching or on the track, of their danger; but when a person distinctly sees a train approaching, running rapidly, and he has time and opportunity to avoid injury, readily and easily, it is his duty to do so, irrespective of the fact whether there is a blowing of a whistle or ringing of a bell upon the engine; and if he omits this plain duty, and is thereby killed, he must be deemed guilty of contributory negligence, and his representatives have no remedy for damages therefor. Judson v. Great Northern Ry. Co., 63 Minn. 248, 254, 65 N. W. 447. There is no proof that the injury was wantonly inflicted, and the question of the rate of speed of the train is covered by the decision of the case just cited.

It is claimed by the appellant that the wood pile above referred to was an obstacle to the view of Nelson in seeing the approaching train. Even if this were true, it would have been his duty to have been more careful, and listened and looked for an approaching train; but this he did not do. As a matter of fact, the view of the coming train was unobstructed, when he was within about 50 feet of the main track, for some 300 or 400 feet west, as already stated. Nor could the fact that there were two tracks there, some 15 or 20 feet apart, have misled Nelson, as he saw the train coming on the main track when he was near or upon the side track, and both tracks and the train were in full view. The reckless and heedless conduct of so many persons, disregarding certain danger, and risking their lives on dangerous railroad crossings, seems to be unchecked and on the increase, notwithstanding the rulings and warnings of the courts. If, in this case, Nelson had used ordinary care and prudence, he would have avoided this injury resulting in his death. This he did not do.

Order affirmed.

An application for a reargument having been made, the following opinion was filed June 13, 1899.

PER CURIAM.

In plaintiff's application for a reargument, his principal criticism of the opinion of the court is that it does not state the facts correctly. Technically, the opinion is subject to this criticism in one or two portions, but not in anything that at all affects the result.

For example, it is stated in the opinion that "the nearest wood pile   *   *   *   was about 57 feet from the main track," while counsel suggests that there was evidence that one wood pile was situated 33½ feet from the main track. The opinion referred to the pile nearest the street or wagon road upon which the deceased was driving, while the wood pile to which counsel refers was situated much further back from, and west of, the street. The ends of the different wood piles were not equidistant from the main track, but became nearer and nearer to it as you went westward, as shown by the map used on the argument. The distances for which a person traveling on the street would have an unobstructed view westward up the track from different points of view stated in the opinion are in accordance with the actual location of the different wood piles as given in the evidence.

Again, the opinion speaks as if the evidence was conclusive that the deceased looked and saw the train, and then urged his horses in order to get over the track before the train reached the crossing. The great weight of evidence is, in our judgment, to that effect, but it would probably be stating it too strongly, to say that it was conclusive. But we think it does conclusively appear that, if he looked, he must have seen the train, and therefore he either looked and saw the train, or else did not look at all. In either case he would be guilty of negligence. Counsel argues that, if he looked, it was still a question for the jury whether he saw the train. But, if he looked where the witnesses say he did (and, if he looked at all, it was there), we think it conclusively appears that he must have seen the train if he looked at all, even if we allow the highest rate of speed of the train justified by any evidence in the case, and if we

76 M.—13

take into account the undisputed evidence as to the distance which he could have seen up the track at or near where the evidence tends to show he looked.

Application denied.